**SOUTH–WESTERN PUBLISHING COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Harry SIMONS, Defendant-Appellant.**

**Harry SIMONS, Plaintiff-Appellant,**

v.

**SOUTH–WESTERN PUBLISHING CO., a corporation, Defendant-Appellee.**

Nos. 79–3035, 79–3034.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1981.

Decided July 20, 1981.

As Amended Sept. 30, 1981. Rehearing and Rehearing En Banc Denied Oct. 16, 1981.

Mitchell N. Reinis, Reinis & Fink, Beverly Hills, Cal., for Harry Simons.

Neil M. Soltman, Los Angeles, Cal., argued, for South-Western Pub.; Ralph W. Dau, O'Melveny & Myers, Los Angeles, Cal., on brief.

Before GOODWIN and FERGUSON, Circuit Judges, and MURPHY,* District Judge.

GOODWIN, Circuit Judge.

## FACTS

Harry Simons, an author, appeals from a judgment dismissing his copyright infringement action, and holding him in breach of a contract with his publisher, South-Western Publishing Co. We affirm.

In 1941, Simons, then a young U.C.L.A. professor, agreed with South-Western Publishing to prepare an accounting textbook. He wrote the book in collaboration with two others and published it late that year. In 1949, after Simons' co-authors had assigned to him their rights in the book, Simons agreed with South-Western to revise the 1941 textbook and divide it into two books: Advanced Accounting and Intermediate Accounting. Both texts were published in 1949. Periodically thereafter, Simons and South-Western entered into contracts to revise the texts. The contracts in dispute here were made in 1966 and 1970. South-Western contends that paragraph A(7) of the two contracts requires Simons to revise the fourth and fifth editions of the

two books into the fifth and sixth editions; and that if Simons fails to revise, South-Western is free to hire other authors to do the job, and pay Simons any royalties it sees fit.

Simons contends that he owns the renewal copyrights to the 1949 basic texts, and that South-Western's continued publication of the revised editions without his consent infringes his copyright. It is Simons' position that paragraph A(7) does not require him to revise the texts, and even if it does, the contracts do not permit South-Western to continue publishing "his" works without paying him adequate compensation.

The district court found: (1) that the renewal copyrights and all other copyrights belonged to South-Western; (2) that Simons breached his contract with South-Western by failing to revise; and (3) that South-Western properly paid Simons enough royalties for the fifth and sixth editions and properly discontinued all royalty payments to him for the publication of subsequent texts.

## STANDARD OF REVIEW

The district court made detailed findings of fact. The findings taken as a whole are "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Alpha Distrib. Co. of Cal. Inc. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

Because it is not our function as an appellate court to retry the issues of fact, we review the factual determinations made by the district court according to Fed.R.Civ.P. 52. Here we review contractual interpretation, an exercise which involved contractual

---

*The Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation.

meaning and intent, questions of fact for the trial court. *Gillespie v. Travellers Ins. Co.*, 486 F.2d 281, 283 (9th Cir. 1973). Therefore, unless the findings are clearly erroneous, they satisfy Rule 52.

## INFRINGEMENT

Simons contends that South-Western is infringing his renewal copyrights to the 1949 basic texts. To prevail on this claim, Simons must establish that he alone is entitled to the renewal copyrights. South-Western contends that Simons assigned to it the renewals at the time of their first contractual arrangement. The issue is therefore a matter of contractual intent.[1] Did Simons assign the renewals to South-Western in return for royalties?

■ The district court necessarily found that Simons assigned his renewal rights. While the court made no express factual finding of an assignment, the evidence supports the court's conclusion which is reflected in the judgment.[2] South-Western, without objection from Simons, obtained copyrights. Although the first contract did not specify whether South-Western was to own the renewal copyrights, every contract between Simons and South-Western after 1949 expressly transferred to South-Western both the original and renewal copyrights to each revision. The district court's finding that the renewals belonged to South-Western satisfies Rule 52. It follows that South-Western did not infringe Simons' copyrights.

## REVISION

The principal contractual paragraph at issue here is A(7), which reads the same for both contracts in dispute:

"(A) Author agrees . . . .

" . . .

"(7) To prepare a revision of the manuscript satisfactory to and without expense to Publisher whenever, in the judgment of Publisher, this is considered necessary. In the event that Author is unwilling, unable, fails, or refuses to prepare said revised manuscript in a manner satisfactory to Publisher, Publisher may have right to obtain a new author or authors and to make such division of royalty on the new edition as Publisher deems necessary in order to obtain satisfactory authorship."

South-Western argues that this language requires Simons to revise the texts for which the contract was made when South-Western requests revisions. Simons disputes this.

■ The trial court found that paragraph A(7) of the contracts vests in South-Western, and not in the revisor, the decision as to whether a revision was needed. This finding satisfies Rule 52. Simons raises a number of frivolous points to rebut the trial court's interpretation of the contract. But the plain language of A(7), as well as the evidence surrounding the intent of the parties on the meaning of A(7) fully supports the district court's finding that South-Western bargained for the right to decide when a revision is needed.

## BREACH

Paragraph A(7) empowered South-Western to revise the texts itself if Simons was

---

1. 2 Nimmer on Copyright, § 9.06[A] at 9–68 (1980), states:

"Whether . . . [an] assignment (or license) will be construed as purporting to convey rights in the renewal copyright ultimately turns on the intention of the parties, and as such presents an issue of fact. . . ."

*See also Picture Music, Inc. v. Bourne, Inc.*, 314 F.Supp. 640, 648 (S.D.N.Y. 1970), *aff'd on other grounds*, 457 F.2d 1213 (2nd Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972).

2. An appellate court may affirm on the basis of any evidence in the record that supports the trial court's judgment. The failure to make an express finding of fact by the district court "does not require remand if a complete understanding of the issues may be had without the aid of separate findings." *Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975); *see also United States v. Hudspeth*, 384 F.2d 683, 686 (9th Cir. 1967).

"unwilling, unable, fail[ed] or refuse[d] to revise the texts." The district court found that Simons had refused to perform. Its finding satisfies Rule 52. Simons does not even pretend that he performed either the 1966 or 1970 contracts.

In defense, Simons makes several arguments. They can be characterized as non-frivolous only by extravagant deferral to artistic temperament. First, Simons alleges that his performance was excused and discharged by South-Western's breach of contract in hiring other authors to revise Simons' texts. This argument stands the contract on its head. South-Western hired the other authors only after Simons had breached the contract by refusing to revise the texts. In these circumstances, it was South-Western's duty that was discharged, not Simons' duty.

■ Second, Simons contends that South-Western's request to revise was "premature." Paragraph A(7) of the contracts dictates that a revision must be prepared by Simons "whenever, in the judgment of the Publisher this is considered necessary." The trial court found, and we agree, that this language vested in "South-Western, not in the revisor, the decision as to whether a revision was needed." The trial court also found that South-Western exercised its judgment reasonably. South-Western's requests that Simons revise "were made . . . [when they were] because, if South-Western were to meet its objective and adhere to the industry's revision schedule, commencement of efforts was needed . . . [at the time South-Western made the request]." This finding is also consistent with Rule 52. South-Western's request that the texts be revised at no greater than five year intervals was justified. Intervals of as little as three years between revisions are common in the educational textbook industry. *See e. g., McGraw-Hill, Inc. v. Worth Publishers, Inc.,* 335 F.Supp. 415, 418 (S.D.N.Y. 1971). The evidence amply demonstrates that South-Western made the request when it did in order to meet competition.

■ Simons also argues that the contracts could not possibly have required him to revise the texts in perpetuity. He contends that such a construction of the contract would be absurd. We do not agree. Parties are entitled to contract for anything that is not illegal. At the time Simons signed the contract, he may have been very willing to agree to revise the texts during his lifetime in order to secure a publisher. A court will not strike down such a contract merely because an author, after becoming well-known, might be unwilling to sign such a provision. Breach of contract was fully established by the evidence.

## ROYALTIES

The renewal copyrights to the 1949 texts belong to South-Western. In exchange for their sale, Simons contracted with the publisher to receive royalties. The amount to which he is entitled is determined by the contract.

■ Paragraph A(7) permits the publisher to hire a new author to complete the revision in the event the original author breaches the contract by failing to revise. The same paragraph also permits South-Western "to make such division of the royalty on the new edition as the Publisher deems necessary in order to obtain satisfactory authorship." Pursuant to A(7) South-Western offered Simons, after he breached, 9 per cent and 9¼ per cent for the fifth and sixth editions respectively. The court found that the offer was a reasonable allocation in view of the royalties South-Western had to pay the authors it hired to revise the texts after Simons refused. This finding was not clearly erroneous. Simons was offered more than 50 per cent of the royalty distributed on the fifth and sixth editions even though he never revised the fifth edition, and it was never published. Simons worked on the sixth edition, but did not complete it, and refused to complete it. The money he received for the work he did was at least reasonable compensation. The evidence fully supports the trial court's conclusion against additional royalties.

■ South-Western refused to pay Simons royalties for texts subsequent to the

fifth and sixth editions. The district court held that the refusal was justified, but the court did not make an express finding of fact that the parties intended in paragraph A(7) that South-Western need not pay Simons royalties beyond one edition after the last edition on which he worked. The failure to make such a finding was not fatal.[3] Evidence in the record supports the district court's holding. The issue is whether Simons sold his copyrights to South-Western in 1949 for royalties and in so doing contracted with South-Western not to be paid royalties beyond one edition after the last edition on which he worked. South-Western introduced at trial the testimony of its longstanding editor Mr. Crabbe that this was the bargain. South-Western also introduced letters it sent to Simons in the course of their business relationship that established Simons' awareness of the royalty termination policy. The evidence permitted the trial court to interpret the contract as it did. The court was correct in holding that South-Western no longer must pay Simons royalty for texts subsequent to the fifth and sixth editions.

Other issues were briefed and argued by Simons but do not warrant discussion.

Affirmed.