**Don Patrick NICHOLSON,**
**Plaintiff-Appellant,**

**v.**

**BOARD OF EDUCATION TORRANCE UNIFIED SCHOOL DISTRICT, et al.,**
**Defendants-Appellees.**

**No. 79–3824.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 1981.

Decided July 30, 1982.

Michael D. Simpson, Washington, D. C., for plaintiff-appellant.

Audrey Oliver, Deputy County Counsel, Los Angeles, Cal., for defendants-appellees.

Before TANG and NELSON, Circuit Judges and SPENCER WILLIAMS,* District Judge.

SPENCER WILLIAMS, District Judge:

This appeal results from an action filed by plaintiff and appellant Don Patrick Nicholson in which he alleged that his employment as a high school journalism teacher was terminated wrongfully as a result of constitutionally protected action he took as his school's newspaper advisor. The United States District Court for the Central District of California rendered judgment for the defendants on the ground that Nichol-

son had failed to establish that his rights under the first amendment were infringed. We agree and therefore affirm.

## I. FACTS

Appellant, Don Patrick Nicholson, was employed as a probationary teacher of journalism at Torrance High School from September 1968 until termination of his employment in May 1970. During the course of his two years of employment, which included service as the advisor to the school-sponsored newspaper, Nicholson became involved in a series of disputes with school officials regarding publication of certain articles. These articles concerned a number of controversial subjects including a feature story on minority unrest in a local community, an article on police-student relations and a critical commentary on the school's treatment of the fifth amendment rights of students.

In light of the sensitive nature of these articles, the school's principal, Dr. Ahee, informed Nicholson that articles on these limited subjects must be submitted to him before publication to ensure their accuracy. In addition, Dr. Ahee made it clear that he wanted students in the journalism class to adhere to the general ethical standards enunciated by the Rotary International, of which the principal was a member. The standards consisted of the "Four-Way Test" that evaluated expression based on its truth, fairness, good will and benefit.

On several occasions, Nicholson refused to comply with his supervisor's instructions regarding pre-publication review of student-written articles. When articles were presented for review, Dr. Ahee often expressed his disapproval but never denied publication or censored the submitted piece.

At the end of his two year probationary period, Nicholson was informed by the school district that he would not be recommended for reemployment. Appellant sought a hearing before a state administra-

* Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation.

tive officer as provided by California Education Code § 44949(c).

At the hearing on Nicholson's claim, it became clear that the school district had acted on several independent grounds when it refused to grant him tenure. Appellant had a history of failure to comply with record keeping requirements. During his two years at Torrance High School, Nicholson failed to return an interest survey regarding his employment, he failed to complete a required check-out list of materials and he did not submit an identification for school property which resulted in the loss of twenty-eight textbooks.

On other occasions, Nicholson permitted his students to violate school rules and regulations. Appellant often permitted his students to leave class early or even to leave campus entirely in violation of school policies. On one occasion, Nicholson allowed his students to attend a taped television interview in direct violation of the principal's instructions. Another time, appellant permitted a survey to be circulated without prior approval from the administration as was required by school district regulations. After school officials informed him of the violation, Nicholson permitted the survey to continue and published the results in the student newspaper.

Appellant was given a five day hearing in June 1970 at which time he argued that his first amendment rights had been violated. At the conclusion of the proceedings, the hearing officer rendered a decision that the dismissal was justified on several independent grounds including insubordination, failure to obey school rules and failure to cooperate with school officials in his capacity as journalism teacher.

Three years later, Nicholson filed the instant lawsuit contending *inter alia* that the defendants' refusal to renew his teaching contract was based on actions protected by the first and fourteenth amendments.[1]

The court below tried the case on the factual record from the administrative hearing pursuant to stipulation. The court found that the plaintiff failed to carry his burden of showing that the defendants had violated his rights of free expression and subsequently filed Findings of Fact and Conclusions of Law from which the plaintiff appealed.

## II. QUESTIONS PRESENTED

On appeal, the questions presented are whether the trial court's conclusion that the school district's decision was not premised on an impermissible motive is erroneous, whether appellant has a personal first amendment right to encourage publication of controversial articles in the high school newspaper and whether the district court's findings of fact are sufficiently comprehensive so as to allow for meaningful review.

## III. DISCUSSION

■ A decision not to rehire an individual is improper if it is made by reason of that person's exercise of constitutionally protected rights. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). In cases such as the instant one where the dismissal was based on several grounds, only some of which relate to activity allegedly protected by the Constitution, the plaintiff has the initial burden to show that the press-related activities were constitutionally protected and that these activities played a substantial role in the nonrenewal decision. If the plaintiff meets this burden, the defendant must then demonstrate by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. at 576.

### A. Students' First Amendment Rights

■ The first question presented by this appeal is whether newspaper writers for a

1. The appellees did not argue the defense of the statute of limitations in the lower court or in their brief on this appeal. *See Smith v. Cremins*, 308 F.2d 187, 189 (9th Cir. 1962). As such, the statute of limitations defense, if there was any, has been waived because it was not raised in the court below. *United States v. Krasn*, 614 F.2d 1229, 1236 (9th Cir. 1980).

high school publication, and vis-a-vis their faculty advisor,[2] have a constitutional right to be free from pre-publication review by the school principal. The district court found that the defendants had no impermissible motive in seeking to terminate plaintiff's employment and therefore necessarily concluded that the rights of the high school students had not been infringed. This court agrees and affirms the trial court's conclusion that the principal's actions did not violate constitutionally protected rights.

■ It is now well-established that secondary students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). However, these rights are not coextensive with those of adults and may be modified or curtailed by school policies that are reasonably designed to adjust those rights to the needs of the school environment. *See Williams v. Spencer*, 622 F.2d 1200, 1205 (4th Cir. 1980).

■ Writers on a high school newspaper do not have an unfettered constitutional right to be free from pre-publication review. In fact, the special characteristics of the high school environment, particularly one involving students in a journalism class that produces a school newspaper, call for supervision and review by school faculty and administrators. Under the precise circumstances of this case administrative review of a small number of sensitive articles for accuracy rather than for possible censorship or official imprimatur does not implicate first amendment rights.[3]

■ In the high school setting, school officials and teachers must be accorded wide latitude over decisions affecting the manner in which they educate students.[4] The role of the judiciary in the supervision of public education, therefore, is limited and arises only where the resolution of conflicts in school administration clearly involves constitutional values. *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); Diamond, *The First Amendment and Public Schools: The Case Against Judicial Intervention*, 59 Tex.L. Rev. 477 (1981).

■ In the present case, the school possessed a substantial educational interest in teaching young, student writers journalistic skills which stressed accuracy and fairness. While appellant properly stressed the value of a *free* press, the school principal also was acting within appropriate bounds when he emphasized the concomitant need for a *responsible* press. When Dr. Ahee informed appellant and his journalism class

2. Appellees do not address the contention raised by the appellant that a high school journalism teacher has standing to assert the first amendment rights of his students. However, since Nicholson alleges that he has directly suffered "injury in fact" and he certainly is in a position to assert the rights of his students just as effectively as they would themselves, he may challenge the school official's actions as applied to his students. *Craig v. Boren*, 429 U.S. 190, 193, 97 S.Ct. 451, 454, 50 L.Ed.2d 397 (1976).

3. This court is not faced with a situation where school officials prohibited or censored a student publication. Since scholastic newspapers fall within the ambit of the first amendment, outright prohibition or censorship would require a strong showing on the part of the school administrators that publication of the forbidden materials would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker v. Des Moines Indep. Commu-*

*nity School Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969). *See also Thomas v. Board of Educ.*, 607 F.2d 1043 (2d Cir. 1979), *cert. denied*, 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980); *Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1971); *Reineke v. Cobb County School Dist.*, 484 F.Supp. 1252 (N.D.Ga.1980); Trager, *Freedom of the Press in College and High Schools*, 35 Albany L. Rev. 161 (1971); Cal.Ed. Code § 48916.

4. Different considerations govern application of the first amendment on the college campus and at lower level educational institutions. The activities of high school students, for example, may be more stringently reviewed than the conduct of college students, as the former are "in a much more adolescent and immature stage of life and less able to screen fact from propaganda." *Schwartz v. Schuker*, 298 F.Supp. 238, 242 (E.D.N.Y.1969); Wright, *The Constitution on the Campus*, 22 Vand.L.Rev. 1052, 1053 (1969).

that certain articles in the school-sponsored newspaper must be reviewed for accuracy,[5] he properly exercised his supervisorial authority to read those occasional articles about subjects so sensitive that it would be derelict to accord untrained, adolescent writers absolute freedom from pre-publication review for accuracy.

■ Accordingly, the lower court properly recognized that the principal's conduct was substantially related to the educational process and that the appellant had not been denied rights guaranteed by the first and fourteenth amendments.

### B. Motivating Factors Behind Dismissal

■ When considering a public employer's motivation for dismissing an employee, the trier of fact must examine the various proffered reasons and determine whether constitutionally protected activities played a substantial role in the decision. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). In the present case, the district court made the factual finding that first amendment considerations did not motivate the decision not to rehire the appellant. Accordingly, we must affirm unless this determination is clearly erroneous. Fed.R.Civ.P. 52(a).[6]

■ The record in the present case fully supports the lower court's finding that the school board's actions were properly motivated. The evidence in the record demonstrates that Nicholson failed to follow several rules governing school bookkeeping duties and declined, on several occasions, to require his students to follow school rules.

5. Dr. Ahee also explained the so-called "Four-Way Test" to appellant and his classes. However, the record reveals that the principal did not impose this test as an absolute standard for review nor did the students feel compelled to implement it as an official directive.

6. The "clearly erroneous" standard applies to findings of fact even when the trial court relies, as it did in this case, solely on a written record. *United States v. Mountain States Constr. Co.*, 588 F.2d 259, 264 n.5 (9th Cir. 1978).

7. Nicholson also argues that the school board could not discharge him for refusing to comply

Moreover, Nicholson repeatedly disobeyed orders of his immediate supervisor regarding the student newspaper—a fact that concededly led to the deterioration of an important school relationship. *See Simard v. Board of Educ.*, 473 F.2d 988, 996 (2d Cir. 1973).

■ While courts must be vigilant in protecting employees from dismissals based on their participation in constitutionally protected activities, this protection does not extend to employees who legitimately are not reappointed. *Mabey v. Reagan*, 537 F.2d 1036, 1045 (9th Cir. 1976). The decision to terminate a probationary teacher's employment is based on many subjective factors, the application of which must be left, in the first instance, to the discretion of local school officials. *Id.* at 1044–45.

■ Notwithstanding the special consideration that must be given to pretextual reasons which may conceal an actual motive to terminate an instructor for exercising first amendment rights, the decision as to an employer's true motivation plainly is one reserved to the trier of fact. In this case, the district court's finding on this factual question was not clearly erroneous.

### C. Appellant's Personal First Amendment Rights

■ Appellant contends that he had a personal right to encourage publication of controversial articles in the high school newspaper and that his discharge for failure to submit articles on sensitive topics to school officials was improper.[7] The district court disagreed and found that the defendants did not suppress Nicholson's freedom

with a directive that would violate the first amendment rights of his students. *See, e.g., Bertot v. School Dist. No. 1*, 522 F.2d 1171, 1183 (10th Cir. 1975). However, the right to refrain from actions that would infringe another's constitutional rights is derivative and depends on the validity of the other party's claim. Here the requested action would not have violated the first amendment rights of Nicholson's students. (See discussion *supra* at pp. 862–864.) Therefore any derivative rights based thereon must fail.

of expression. We agree and affirm the district court's conclusion.

■ The question whether a school teacher's speech is constitutionally protected expression requires balancing "the interests of the teacher as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

In *Pickering*, the Supreme Court identified several factors to consider in striking a balance between the competing interests. Pickering was a teacher who was dismissed for writing and publishing in a newspaper a letter criticizing certain actions taken by the local board of education. In holding that Pickering could not be dismissed because of the statements he made, the Court observed that

> [t]he statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.

*Id.* at 569–70, 88 S.Ct. at 1735.

The Court also noted that a teacher's expression might not be entitled to protection if it impeded the teacher's proper performance of his daily duties in the classroom or interfered with the regular operation of the school generally. *Id.* at 572–73, 88 S.Ct. at 1736–1737.

■ Application of the *Pickering* factors to the present case amply supports the district court's finding that Nicholson's own first amendment rights were not infringed.[8] Unlike the activity at issue in the *Pickering* case, the conduct for which appellant seeks protection did involve questions of supervisorial discipline, loyalty and harmony among coworkers. First, appellant concedes that his working relationship with the school principal deteriorated when he refused to comply with instructions regarding the school newspaper.[9] The effectiveness of this close working relationship was further undermined when appellant openly defied the wishes of Dr. Ahee when he allowed his students to attend a taped television interview. Finally, the school board properly concluded that its interests were threatened when appellant conducted and published the student newspaper's survey in direct violation of established administrative policy. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

Furthermore, several of the articles which appellant failed to submit to the principal concerned other members on the school's faculty who were extremely anxious to ensure accurate and fair reporting due to the sensitive nature of the subject matter being discussed. When these articles were published, several containing inaccuracies and misimpressions, Nicholson's coworkers became angry and dissatisfied with the school newspaper and its advisor. As such, the potential for further personality

---

8. Our decisions have indicated that this court itself is required to review the record and weigh the *Pickering* factors because this is a question of law. *Bernasconi v. Tempe Elementary School Dist. No. 3*, 548 F.2d 857, 862 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977). *See also Boehm v. Foster*, 670 F.2d 111, 113 (9th Cir. 1982) (expression which seriously undermines effectiveness of close working relationship is not constitutionally protected speech).

9. Appellant is, of course, correct when he asserts that if the deterioration in the working relationship resulted from imposition of requirements that Dr. Ahee was constitutionally forbidden to impose, the strained relationship could not be considered as a factor supporting the state's interests. In the present case, however, the school principal's restrictions were not unlawful. (See discussion *supra* at pp. 862-864.)

conflicts within the faculty was sure to have a detrimental effect on intra-school harmony. *See Lefcourt v. Legal Aid Society*, 312 F.Supp. 1105, 1112–13 (S.D.N.Y. 1970), *aff'd*, 445 F.2d 1150 (2d Cir. 1971).

Therefore, the trial court properly concluded that the school board did not violate appellant's rights of free expression under the circumstances of this case.

### D.  District Court's Findings

Finally, appellant argues in the alternative that the district court's order does not provide a basis for determining whether the court properly rejected his constitutional challenge. Specifically, appellant contends that the lower court's findings misallocated the burden of proof and failed to indicate what the court thought motivated the defendant and why it was permissible.[10]

■ The test in this circuit as to the adequacy of findings of fact is whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision. *South-Western Publishing Co. v. Simons*, 651 F.2d 653, 655 (9th Cir. 1981), *cert. denied*, — U.S. ——, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); 5A J. Moore, Moore's Federal Practice ¶ 52.06[1] (2d ed. 1980).

■ Nicholson is correct that the lower court's Finding No. 7 implied a misallocation of the burden of proof announced in the *Mt. Healthy* decision. In fact, a plaintiff need not prove that his dismissal was based *solely* upon his constitutionally protected activities, only that these activities

constituted "a substantial factor" in the nonrenewal decision. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

■ Notwithstanding the error contained in Finding No. 7, the district court's order must be affirmed first because it still states a basis that supports the judgment. Under the *Mt. Healthy* rule, the plaintiff bears the additional and independent burden to show that the press-related activities were constitutionally protected. With respect to this dispositive question, the lower court found that Nicholson "failed to establish that defendants acted to suppress plaintiff's freedom of expression." The trial court further concluded that the plaintiff had "not been denied rights guaranteed by the First and Fourteenth Amendment of the United States Constitution ..." (Conclusion of Law No. 2, Record p. 58). Accordingly, the trial court clearly found that the plaintiff failed to discharge his evidentiary burden on this issue.

■ Second, the lower court cited our decision in *Mabey v. Reagan*, 537 F.2d 1036 (9th Cir. 1976) and concluded that the defendants had no impermissible motive in seeking to terminate plaintiff's employment, i.e. one based on constitutionally protected activity. The district court necessarily found, therefore, that the defendants' true motives were proper. This finding is fully supported by the evidence. (See discussion *supra*, at p. 864.[11]

### IV.  CONCLUSION

The district court properly found that the defendants did not infringe either Nichol-

---

10. The trial court made the following relevant findings of fact:

> (7) Plaintiff, in this action pursued in Federal Court, has failed to establish that his dismissal from defendant school district was based solely upon his actions as a faculty advisor to the school newspaper.
>
> (8) Plaintiff has failed to establish that defendants acted to suppress plaintiff's freedom of expression.
>
> (9) Plaintiff has failed to establish that defendants had any impermissible motive in seeking to terminate plaintiff's employment in defendant school district.

(Record p. 57.)

11. An appellate court may affirm on the basis of any evidence in the record that supports the trial court's judgment. The failure to include express findings on all relevant facts "does not require remand if a complete understanding of the issues may be had without the aid of separate findings." *Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975); *see also South-Western Publishing Co. v. Simons*, 651 F.2d 653, 652 n.2 (9th Cir. 1981), *cert. denied*, — U.S. ——, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

son's or his students' constitutional rights. Additionally, the findings of the district court are sufficiently comprehensive and pertinent to dispositive issues as to form a basis for its decision.

The judgment of the district court is affirmed.