**Clara LOUIE, Representative for Wayne Louie, Deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 84–4386.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 5, 1985.

Decided Nov. 13, 1985.

820

Neil J. Hoff, Tacoma, Wash., for plaintiff-appellant.

Gene S. Anderson, U.S. Atty., William Rubidge, Asst. U.S. Atty., Tacoma, Wash., for defendant-appellee.

Before EUGENE A. WRIGHT, PREGERSON and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Although several issues are raised on appeal, we are concerned primarily with the question: Did the government have a special relationship with an off-duty soldier involved in a fatal accident to make it liable under the Federal Tort Claims Act for a death on a public highway?

FACTS

About 9:00 p.m. on August 12, 1982, Deputy Daniel Hudson of the Pierce County Sheriff's Office stopped a private car driven by James Rowe, an off-duty soldier stationed at Fort Lewis, Washington. Following field sobriety tests, Rowe was arrested for driving while under the influence of alcohol (DWI). Deputy Hudson took Rowe to a precinct office. His car was left at the site of the initial stop, several miles from the main gate at Fort Lewis. Rowe kept the car keys. At the sheriff's office, a breathalyzer test on Rowe registered .16+ percent alcohol. Deputy Hudson then cited Rowe for violation of the county criminal code for DWI.

About 10:00 p.m., Deputy Hudson telephoned the military police at Fort Lewis to get transportation for Rowe back to his duty unit. Hudson spoke with Sergeant Emil, the Military Police (MP) Desk Sergeant, and Sergeant Webber, the Charge of Quarters (CQ) on duty at Rowe's unit. Hudson told both sergeants that Rowe had been arrested for DWI. Sergeant Webber asked Deputy Hudson to return Rowe to the MP at the post main gate.

When Hudson and Rowe arrived at Fort Lewis, Specialist Four Wendt, MP on duty at the main gate, called his headquarters which dispatched MP Hamlin in a patrol car to get Rowe and return him to his quarters. In a sworn statement, Wendt stated that he was told of Rowe's DWI but that Rowe was cooperative and caused no problems at the main gate.

Hamlin denied knowledge of Rowe's DWI off-post arrest and testified that Rowe did not seem drunk at the time of the "courtesy ride" to his quarters. Both Wendt and Hamlin observed that Rowe was quiet and cooperative. Sergeant Webber testified that he expected Rowe to report to the unit CQ desk, but he did not see Rowe at all that night. MP Hamlin testified that he left Rowe in front of the door to his barracks and watched Rowe proceed inside the building in an orderly manner.

About 2:30 a.m. the next morning, Rowe drove his car on an interstate highway, heading south in the northbound lanes, and collided head-on with the car of Wayne Louie, who was killed instantly. The hospital blood alcohol test performed on Rowe one hour later indicated a level of .20 percent alcohol. Rowe sustained substantial brain injury and remains seriously impaired and confined to a wheelchair. Louie's widow, the appellant, sued the United States and Rowe under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (1982), seeking damages for wrongful death.[1]

---

1. Section 1346(b) provides that: "[t]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of

PROCEEDINGS BELOW

Following a bench trial, the district court made findings of fact and conclusions of law. It found that the accident and death of Wayne Louie were the proximate result of the negligence of Rowe. It concluded, however, that "[t]he Defendants, United States Army and the United States of America, had no duty to Plaintiffs herein." The court entered judgment for the defendant.

Louie moved under Rule 52(b), Fed.R. Civ.P., to amend the findings and conclusions, contending that two essential issues of material fact were not addressed: (1) whether a "special relationship" existed between Rowe and the United States within the meaning of Restatement (Second) Torts § 315, and (2) whether, under Washington law, a civilian police authority would be liable to the plaintiff on the facts in this case. Louie requested in the alternative that the district court certify the second issue to the Washington Supreme Court. The motion to amend was denied, and Louie timely appealed.

On appeal, Louie presents these issues: (1) Whether the court erred in denying the motion to amend under Fed.R.Civ.P. 52(b) because it failed to address material issues;

(2) Whether it erred in failing to certify a question of state law to the Washington Supreme Court;

(3) Whether it erred in its application of controlling law under the Federal Tort Claims Act; and

(4) Whether multiple and cumulative errors of law and procedure by the district court denied plaintiff/appellant a fair and impartial trial.

the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. Except for the jurisdictional statement in Conclusion of Law No. 1, we view the remaining "conclusions of law" as mixed questions involving the application of law to establish facts, rather than pure questions of law requiring *de*

ANALYSIS

I. *Standard of Review*

We review the court's findings of fact under the "deferential, clearly erroneous standard." *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); Fed.R.Civ.P. 52(a).

■ The findings and conclusions here focus on whether the government was negligent in failing to control more carefully the actions of Rowe during the several hours prior to the fatal accident. Although the determination of whether established facts constitute negligence involves a mixed question of law and fact, the "mixed question of negligence" is an exception to the general rule that mixed questions are reviewed *de novo. McConney,* 728 F.2d at 1204. We shall review the district court's findings and conclusions under the clearly erroneous standard.[2]

■ "The existence and extent of a duty of care are questions of law," *Armstrong v. United States,* 756 F.2d 1407, 1409 (9th Cir.1985), which are determined by reference to Washington law. This circuit reviews *de novo* a district court's interpretation of state law. *Matter of McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

II. *Adequacy of Findings and Conclusions*

■ The standard for adequacy of factual findings in this circuit is "whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to

novo review. *See McConney,* 728 F.2d at 1200–01. The pertinent "Conclusions of Law" made by the district court in this case are:

"2. The death of Mr. Louie on August 13, 1982 was the proximate result of the negligence of James E. Rowe.
3. The Defendants United States Army and the United States of America had no duty to the Plaintiffs herein.
4. That Defendants were not negligent under the facts in this case."

enable it to determine the grounds on which the trial court reached its decision." *Nicholson v. Board of Education Torrance Unified School District,* 682 F.2d 858, 866 (9th Cir.1982) (citing *South-Western Publishing Co. v. Simons,* 651 F.2d 653, 655 (9th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)); *see also Clady v. County of Los Angeles,* 770 F.2d 1421, 1433 (9th Cir.1985) (findings adequate if they are sufficiently comprehensive to provide a basis of decision and are supported by the record).

■ A district court's failure expressly to include necessary findings does not require remand if a complete understanding of the issues may be had from the record. *Swanson v. Levy,* 509 F.2d 859, 861 (9th Cir.1975). We may affirm a judgment on the basis of any evidence in the record that supports it. *Nicholson,* 682 F.2d at 866 n. 11.

■ The crucial issue here is whether the government had a duty to control an off-duty serviceman that would give rise to negligence liability under the Federal Tort Claims Act, based on an application of Washington law. Although the findings and conclusions in this case are not comprehensive, we find no need to remand for more findings because we can discern from the record the basis of the trial court's decision.

The colloquies between counsel and the district judge on the government's motions to dismiss disclose fully the judge's focus on whether a "special relationship" existed between the government and Rowe. Judge Tanner was persistent in focusing attention on the issue of negligence liability under Washington law.

Appellant contends that the court failed to address the alleged special relationship between the government and Rowe. The record supports our conclusion that the court relied to a considerable extent on the *absence* of a special relationship as a basis for concluding that the government owed Louie no duty to control an intoxicated soldier.[3]

The record gives sufficient information to give us a clear understanding of the basis of the court's decision. This conclusion that the government owed no duty to appellant properly rested on a consideration of negligence liability under Washington law, including whether a special relationship existed between the government and Rowe.[4] While more explicit findings and conclusions would obviate the need to rely on the trial record, we decline appellant's invitation to remand to amend the findings and conclusions. In addition, because the findings and conclusions were adequate, the district court did not err in denying appellant's motion to amend.

### III. *Failure to Certify Question of State Law*

Appellant contends that the court erred when it declined to certify to the Washington Supreme Court the question whether civilian police, situated as was the government in this case, would be liable for the actions of an intoxicated person. We note that the issue of certification was first raised in a post-judgment memorandum and that appellant requested certification only "[i]f the Court is hesitant to interpret local law with respect to the issue...." Indeed, throughout the trial and in her briefs on appeal, appellant did not contend that the relevant state law was too uncertain to be determined and applied by the federal court.

---

3. After all evidence had been presented, the judge stated: "Well, if I understand it, I do not see how there can be a special relationship at the military base, if there is not a special relationship in the state of Washington under the Federal Tort Claims Act."

4. The appellant appears to concede this issue in her opening brief, which noted: "While the Findings and Conclusions do not provide clear bases for the trial court's reasoning, the record below reflects that the court in coming to its decision must also have determined that a governmental entity in Washington could *not* be held liable for damages proximately resulting from the premature release of a still intoxicated DWI offender."

The appellant listed the certification issue on appeal, but did not brief it. Nor did the government. This court "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief." *International Union of Bricklayer & Allied Craftsman v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

■ We find that the issue has not been waived. However, we conclude the claim fails on its merits. Use of the certification procedure in any given case "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Here, the court did not abuse its discretion in resolving the issue of the government's liability based on application of Washington law without resort to certification.

## IV. *Application of Controlling Law Under Federal Tort Claims Act (FTCA)*

Under the FTCA, the district court must determine whether the United States is subject to tort liability by applying the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b); *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir.1983).

In actions arising under the FTCA, the United States is liable for the negligence of its employees only "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). To ascertain the government's liability in this case, we determine whether "Washington law would impose liability on private persons or corporations under similar circumstances." *Rayonier, Inc. v. United States*, 352 U.S. 315, 318, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957).

An essential element in any negligence action under Washington law is the existence of a legal duty which the defendant owes the plaintiff. *Petersen v. State*, 100 Wash.2d 421, 425–26, 671 P.2d 230, 236 (1983). The common law rule that a person has no duty to prevent a third party from causing physical injury to another is reflected in the Restatement (Second) of Torts § 315, which states two exceptions based on the existence of a "special relation." [5]

The parties dispute whether the law governing the liability of municipal corporations for the negligence of their law enforcement employees should apply by analogy to determine whether the United States had a duty to control Rowe's actions.

Appellant's position is that Rowe's military status created a special relationship with the United States that gave rise to a duty to protect such "foreseeable victims" as Louie under Washington law as applied in *Petersen*. She contends that there is no need to analogize the law of municipal corporations to reach the question of governmental liability. Finally, she contends that even if the analogy applied, civilian police in Washington could be held liable for failing to control the actions of an intoxicated person.

The government argues that since the sovereign immunity of the State of Washington was abrogated in 1961[6] and since the sovereign immunity of political subdivisions and municipalities was abrogated in

**5.** Section 315. General Principle.
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

**6.** RCW 4.92.090 provides: "The State of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same

1967,[7] the state and its political subdivisions are treated as private persons for purposes of tort liability. The government contends that reference to Washington law, setting forth the liability of state and municipal entities to establish the government's standard of liability under the FTCA, is both necessary and proper. We agree.

■ The circumstances here involve government employees in a law enforcement function. Questions as to the power and authority to arrest, to maintain custody, and to lawfully restrict a person's liberty, are unique to the law enforcement function. Because private persons do not wield such police powers, the inquiry into the government's liability in this situation must include an examination of the liability of state and municipal entities "under like circumstances."

We agree also with the government's contention that, under Washington law, the liability of a state or municipal governmental entity is the same as that of a private person or corporation. This equivalence is important because of this court's position in *Wright v. United States*, 719 F.2d 1032, 1034–35 (9th Cir.1983), that a finding of immunity for state employees under state law does not determine the scope of the United States' liability under the FTCA. Although Washington recognizes a "public duty doctrine" [8] applicable to actions of law enforcement officers, *Bailey v. Town of Forks*, 38 Wash.App. 656, 659, 688 P.2d 526, 528–29 (1984), this is merely "a mechanism for focusing upon whether a duty is actually owed to an individual claimant." *J & B Development Co. v. King County*, 100 Wash.2d 299, 304–05, 669 P.2d 468, 471–72 (1983). The Washington court has noted that the abrogation of municipal sovereign

immunity by RCW 4.96.010 "was not intended to create new duties where none existed before." *Id.*, 100 Wash.2d at 305, 669 P.2d 468. Instead, the purpose of RCW 4.96.010 "was to permit a cause of action in tort *if a duty could be established*, just the same as with a private person." *Id.* (emphasis in original).

The rule stated by the court in *Wright*, 719 F.2d at 1034–35, is not violated by the public duty doctrine recognized under Washington law. This doctrine applies to a preliminary determination whether a duty exists and does not alter the underlying liability imposed on political subdivisions and municipalities in RCW 4.96.010. This underlying liability is clearly equivalent to the liability of "a private person or corporation." RCW 4.96.010.

In sum, a determination of the government's liability under Washington law in this case rests properly on an examination of the liability of the state or a municipality under like circumstances.

Washington courts have recognized two exceptions to the public duty doctrine. First, public officers will owe a duty to an individual if there is a "clear statement of legislative intent to identify and protect a particular and circumscribed class of persons [and] a member of that class has an individual claim for violation of the ordinance or statute or creating the duty." *Bailey*, 38 Wash.App. at 659–60, 688 P.2d at 528–29.

Appellant relies on state statutes to provide a basis for finding that a duty would be imposed on public officers in favor of Louie. However, the Washington court recently reviewed one of the statutes relied on by the appellant (RCW 46.65.010), and found that "nothing in the [statute] indicates an intent to 'protect a particular and

extent as if it were a private person or a corporation."

7. RCW 4.96.010 provides: "All political subdivisions, municipal corporations and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct or the tortious conduct of their officers, agents, or employees to the same extent as if

they were a private person or a corporation. . . ."

8. The public duty doctrine states that a duty owed to the public in general is usually considered a duty to no one in particular. *J & B Development Co. v. King County*, 100 Wash.2d 299, 304, 669 P.2d 468, 472 (1983).

circumscribed class of persons' such as to establish governmental liability" and that "the class of persons protected is the public in general." *Hartley v. State*, 103 Wash.2d 768, 785, 698 P.2d 77, 86–87 (1985). We find that the other statutes and policies relied on by the appellant are similarly directed at protecting the general public and are not sufficient to constitute an exception to the public duty doctrine.

A second exception to the public duty doctrine arises under Washington law where some contact or a "special relationship" can be found between the public officer defendant and the injured party plaintiff. *J & B Development Co.*, 100 Wash.2d at 305–07, 669 P.2d at 472–73. *See also Chambers-Castanes v. King County*, 100 Wash.2d 275, 286, 669 P.2d 451, 458 (1983) (actionable duty will arise if (1) some form of privity exists between police and victim that sets victim apart from general public and (2) explicit assurances of protection give rise to victim's reliance). In this case, there clearly was no contact or special relationship between the military authorities at Fort Lewis and Louie, the accident victim.

■ We find that neither of the recognized exceptions to the public duty doctrine is applicable here. Therefore, under Washington law, employees of political subdivisions or municipalities, if situated as were the government employees in this case, would have no duty to a given member of the public such as Louie.

Because the public duty doctrine has not been applied in Washington to the actions of state employees, a separate analysis is required. Appellant relies on *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230 (1983), to support her contention that the government had a duty to Louie arising out of a "special relationship." [9] In *Petersen*, the Washington court found the state liable for the failure of a state psychiatrist to commit a patient with known dangerous propensities.

*Petersen* is distinguishable. There, the contact between the state employee and the third party arose from an involuntary commitment which extended over two weeks and which consisted of regular and continuous observations and professional treatment. In our case, government employees' contact with Rowe consisted of brief contacts in a non-custodial setting, during which time Rowe did not exhibit dangerous behavior.

■ In *Bailey v. Town of Forks*, 38 Wash.App. 656, 688 P.2d 526 (1984), the court found that the "'relationship' between the officer and [the intoxicated person] was too tenuous and unsubstantial to warrant application of [the special relationship] exception." *Id.* at 663, 688 P.2d at 531. We agree that "[a] police officer's mere contact with an intoxicated person hardly creates the same type of relationship as exists between a psychiatrist and his patient, or a custodian and his inmate." *Id.* at 664, 688 P.2d at 531.

Appellant argues that, even if a municipal authority would not be liable under Washington law on the facts of this case, there exists "a distinctly federal relationship" undisturbed by state law. This claim of a "uniquely governmental" relationship is premised on the military's alleged power to exert complete authority over off-duty servicemen. Appellant claims that this relationship imposes a duty on the government to control persons in Rowe's condition for the protection of the public.

This argument is unpersuasive for two reasons. First, it is clear that liability under the Federal Tort Claims Act is based on an application of state law. We reject appellant's attempt to create a separate cause of action based on a military relationship where liability would not lie under state law.

Second, we find that the Supreme Court's decisions in cases following *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), while not control-

---

9. The *Petersen* case did not mention the public duty doctrine. The court in *Petersen* applied Restatement (Second) of Torts § 315 and con-

sidered the existence of a "special relation" between "the actor" (the government) and "the third person" (the tortfeasor).

ling on the facts of this case, establish clear policy guidance for courts considering an examination of military conduct. Rather than encouraging an inquiry into military procedures under the FTCA, these cases persuade us that, as a matter of public policy, federal courts should refrain from interfering in matters of military structure, supervision, and discipline. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) ("Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment.").

More recently, in *United States v. Shearer*, — U.S. —, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Supreme Court observed that allowing recovery under the Federal Tort Claims Act for the negligence of military employees

> would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct. But, as we noted in *Chappell v. Wallace*, such 'complex, subtle, and professional decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments.' "

*Id.* 105 S.Ct. at 3044 (citations omitted).

■ We refuse to accept appellant's attempt to avoid the requirements of the Federal Tort Claims Act, and we refuse to intervene into uniquely military considerations involving internal discipline and control of soldiers on a military reservation.

■ Based on our independent review, we conclude that the government owed no duty to Louie to control the actions of an intoxicated but orderly serviceman, and that the government is, therefore, not subject to liability under the Federal Tort Claims Act for damages arising from the death of Mr. Louie. We affirm the judgment for the government.[10]

AFFIRMED.

PREGERSON, Judge, dissenting:

I dissent.

I do not agree with the majority that the policy underlying *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny requires us to refrain from finding the Army liable for negligence under the Federal Tort Claims Act ("FTCA") in this case. *Feres* is not implicated because a reasonable factfinder could conclude that the negligence of Army personnel was a proximate cause of Wayne Louie's death without making the sort of intrusive inquiry into matters of military structure, supervision, or discipline proscribed by *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) and *United States v. Shearer*, — U.S. —, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

Here, civilian police authorities returned a soldier to Army custody in an intoxicated state after he had been arrested for violating Washington law by driving while under the influence of alcohol ("DWI"). In my view, under Washington tort law a "special relationship" was created once the military police accepted custody of the intoxicated soldier from civilian authorities at the gate to Fort Lewis. In *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230 (1983), the Washington Supreme Court adopted Restatement of Torts § 315, which creates two exceptions to the general rule that there is no duty to control the conduct of a third person to prevent him from causing physical harm to another. One exception

---

**10.** The appellant's final issue on appeal, that "multiple and cumulative errors of law and procedure by the district court" denied appellant a fair trial, is without merit. No evidence in support of this claim has been offered, and we find nothing in the record to warrant further consideration of this claim.

applies in instances where a "special relationship" exists between the actor (here the Army) and the third person (here the intoxicated soldier). The majority suggests that because the soldier's behavior at this time was unremarkable, no duty arose on the part of the Army to restrain him. But the intoxicated soldier's orderly behavior while he was in Army custody should not excuse the Army's failure to act on the knowledge that the soldier was still under the influence of alcohol and had driven his car on the highway while seriously impaired only a short time before.

Because the Army accepted custody of the soldier and undertook to control him, I would hold that a duty arose to exercise reasonable care to prevent him from endangering himself and others until the effects of the alcohol in his bloodstream had dissipated. I would also conclude that the military police breached that duty by releasing the soldier in front of his barracks without further supervision.[1] Thus, the Army, having accepted custody of the soldier from civilian authorities, was negligent in failing to exercise reasonable care to control him until the effects of the alcohol wore off. *See Hartley v. State,* 103 Wash.2d 768, 698 P.2d 77, 86–87 (1985) (where governmental authorities have full control over a dangerous individual and wrongly release him, the government is deemed to have a special relationship with that individual justifying imposition of tort liability).

Holding the military liable where it had actual supervisory control over the intoxicated soldier requires no inquiry into military command supervision, structure, or discipline. A finding of negligence in the circumstances of this case does not imply a duty to maintain any individual soldier's sobriety indefinitely. The duty on the part of the military to exercise reasonable care to control the intoxicated soldier arose only when he was delivered to military authorities by civilian authorities following his arrest for DWI.

1. The record shows that the Army itself recognized that it had an important responsibility in this type of situation. After the fatal accident, the commanding officer of Fort Lewis issued a

In these circumstances, I would hold that the United States is subject to tort liability under Washington law, that the district court had jurisdiction of this action under the FTCA, and that the matter should be remanded to determine the amount of damages.

directive instituting procedures to control closely off-post DWI offenders who are released to military authorities by civilian police.