7 F.3d 821
 Gary CAMERON, dba Cameron Nursery; Cameron Nursery; Fred
Nyberg; Yakima Valley Nursery, Plaintiffs-Appellees,
v.
JANSSEN BROS. NURSERIES, LTD., a foreign corporation, Defendant,
and
PARAMOUNT SERVICES, INC., a corporation, Defendant-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
Gary CAMERON, dba Cameron Nursery; Fred Nyberg, dba Yakima
Valley Nursery, Plaintiffs-Appellees,
v.
JANSSEN BROS. NURSERIES, LTD., a foreign corporation;
United States of America, Defendants,
and
Paramount Services, Inc., dba Paramount Pest Control, a
corporation, Defendant-Appellant.
 Nos. 91-36307, 91-36346.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 15, 1993.
Memorandum Decided Aug. 30, 1993.
Order and Opinion Decided Oct. 12, 1993.
 
 Katherine Gruenheck, U.S. Dept. of Justice, Washington, DC, for defendant-appellant-cross-respondent-appellee.
 Diehl R. Rettig, Raekes, Rettig, Osborne, Forgette & O'Donnell, Kennewick, WA, for plaintiffs-appellees.
 Richard E. Hayes, Chase, Haskell, Hayes & Kalamon, Spokane, WA, for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before: CANBY, WIGGINS, and T.G. NELSON, Circuit Judges.
 ORDER
 The memorandum disposition filed August 30, 1993, is redesignated as an authored opinion by Judge Wiggins.
 OPINION
 WIGGINS, Circuit Judge:
 
 
 1
 Gary Cameron, d/b/a Cameron Nursery ("Cameron"), and Fred Nyberg, d/b/a Yakima Valley Nursery ("Nyberg") (collectively referred to as "the Nurseries"), sued Paramount Services, Inc., ("Paramount") and the United States for damages resulting from Paramount's failure to aerate properly the Nurseries' apple root stock following fumigation with methyl bromide. Paramount cross-claimed against the United States for indemnity and contribution, claiming that the Plant Protection and Quarantine Division ("PPQ") of the United States Department of Agriculture ("USDA") was solely responsible for ensuring proper aeration. Following a bench trial, the district court found Paramount and the United States jointly and severally liable in the amounts of $250,378.48 to Cameron and $51,887.50 to Nyberg. The district court also apportioned fault evenly between Paramount and the United States under Washington law. Paramount and the United States appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the judgment against Paramount and reverse the judgment against the United States.
 
 DISCUSSION
 
 2
 We review for clear error the district court's factual findings. Fed.R.Civ.P. 52(a); In re San Vicente Medical Partners Ltd., 962 F.2d 1402, 1405 (9th Cir.1992). However, we review de novo mixed questions of law and fact. United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Moreover, we review for clear error whether established facts constitute negligence and de novo whether the district court applied the proper standard of care. Ludwig v. Pan Ocean Shipping Co., Ltd., 941 F.2d 849, 850 (9th Cir.1991).
 
 I. Paramount's Liability to the Nurseries
 
 3
 Paramount's defense is relatively simple--PPQ is the party at fault. Paramount argues that the Compliance Agreement between PPQ and Paramount and PPQ's Treatment Manual placed the burden on PPQ to see that the fumigation was properly executed, thus relieving Paramount of any responsibility for ensuring proper aeration. Because the district court found that PPQ was responsible to check the gas concentration levels inside the containers before releasing the root stock, Paramount contends that the sole issue regarding Paramount's liability to the Nurseries "is whether the trial court properly concluded that Paramount had a duty to check on the PPQ." The district court correctly rejected Paramount's argument. The district court persuasively reasoned:
 
 
 4
 To hold that a commercial fumigator can rely upon another party carte blanche to see that dangerous conditions do not exist following a treatment conducted by the fumigator, with the fumigator's equipment, on the fumigator's premises, ignores reality. A reasonably prudent fumigator would not have relied upon another party to perform critical functions in the fumigation process without some safeguards for ensuring that such functions were indeed being performed. There is no evidence that Paramount employed checks and balances to see that PPQ was checking gas concentration levels.
 
 
 5
 Moreover, even if Paramount was not negligent in failing to make sure that PPQ tested the gas concentration levels, Paramount still had an underlying duty to aerate the root stock properly after fumigation. Paramount argues that because the district court failed specifically to address the Nurseries' contention that Paramount had an independent duty to aerate the root stock properly, the district court found no such duty existed. This is not a fair reading of the record or the facts. The district court implicitly found that Paramount had a duty to aerate the root stock properly when it concluded that
 
 
 6
 [i]n view of Paramount's failure to exercise reasonable care to see that gas concentration levels in the boxes were at safe levels for the root stock, the Court finds that Paramount is jointly and severally liable for the injuries to the root stock caused by exposure to excessive gas concentrations.
 
 
 7
 (Emphasis added.)
 
 
 8
 This conclusion is supported by the Compliance Agreement between Paramount and PPQ, which obligated Paramount to adhere to PPQ's Treatment Manual. The Treatment Manual requires that the open-top, non-permeable containers used to transport the root stock be aerated by either removing the containers' plastic liners or by tipping the containers on their sides in order to allow the methyl bromide, which is heavier than air, to flow out of the container. Because Paramount did neither, we conclude that Paramount breached its duty to the Nurseries under the Compliance Agreement and Treatment Manual.II. Paramount's Cross-claim for Indemnity Against the United States
 
 
 9
 Paramount argues that it is entitled to indemnification because it was merely an agent or employee of the government, under 28 U.S.C. § 2671, when it fumigated the Nurseries' root stock. Paramount contends that because it was obligated under the Compliance Agreement to follow the Treatment Manual and to allow PPQ officers to "supervise all aspects of the treatment procedure from start to the final release of the commodity" that Paramount was not an independent contractor. We disagree.
 
 
 10
 Paramount did not act as a federal employee or agency. Under § 2671, the critical distinction between an agency of the United States and an independent contractor is the power of the federal government "to control the detailed physical performance of the contractor." United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976) (quotation omitted). In concluding that a community action agency was not a federal agency, the Orleans Court stated that
 
 
 11
 the question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government.
 
 
 12
 Id. at 815, 96 S.Ct. at 1976 (footnote omitted).
 
 
 13
 Paramount argues that because PPQ was required to "supervise all aspects of the treatment procedure," Paramount was under the detailed control of PPQ. This argument misapplies the concept of agency under the Federal Tort Claims Act ("FTCA"). Paramount did not act as a federal agency; it was an independent contractor who, in order to deliver a valuable service to its client, had to follow detailed fumigation regulations. Paramount did not have to comply with the Treatment Manual, but chose to in order that the fumigated root stock would be admitted to the country. Because we conclude that Paramount was not an agent or instrumentality of PPQ and was thus not entitled to indemnification by the United States, we affirm the district court's judgment against Paramount.
 
 
 14
 III. The United States' Liability to the Nurseries
 
 
 15
 The extent of the government's duty of care in an FTCA case is a question of law that is determined by reference to state law. Louie v. United States, 776 F.2d 819, 822 (9th Cir.1985). The United States is liable only " 'in the same manner and to the same extent as a private individual under like circumstances....' " Rayonier, Inc. v. United States, 352 U.S. 315, 318, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957) (quoting 28 U.S.C. § 2674). When the United States is sued for torts committed in the course of "uniquely governmental functions," this circuit allows recovery only when a state or local government would be liable under like circumstances. See Louie, 776 F.2d at 825. Thus, the United States is liable in this case only to the extent that Washington State or a Washington municipality would be liable. See id. The district court erred because it failed to identify how, under Washington law, PPQ was liable to the Nurseries.
 
 
 16
 PPQ's liability for failing to monitor Paramount's fumigation is governed by Washington's "public duty doctrine." See Taylor v. Stevens County, 111 Wash.2d 159, 759 P.2d 447, 449 (1988). Under this doctrine, "no liability may be imposed for a public official's negligent conduct unless it is shown that 'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general....' " Id. 759 P.2d at 450 (quotation omitted). This doctrine bars the Nurseries' claims against the United States unless PPQ's actions fit within one of several narrow exceptions. The exceptions are: (1) the statutory intent exception; (2) the failure to enforce exception; (3) the "good samaritan" exception; (4) the "special relationship" exception; and (5) the duty to prevent a third person from causing harm exception. See Taggart v. State, 118 Wash.2d 195, 822 P.2d 243, 254 (1992); Honcoop v. State, 111 Wash.2d 182, 759 P.2d 1188, 1192-94 (1988); Brown v. MacPherson's, Inc., 86 Wash.2d 293, 545 P.2d 13, 18 (1975). Because we conclude that none of the exceptions apply to PPQ's actions, we reverse the judgment against the United States.[1]
 
 
 17
 A. The Statutory Intent Exception Does Not Apply.
 
 
 18
 In Washington, the traditional public duty rule of nonliability does not apply where a regulatory "statute by its terms evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons." Honcoop, 759 P.2d at 1192. However, this duty must be created by a statute and not by "regulations, manuals and directives purportedly authorized under [a] statute." Kirk v. United States, 270 F.2d 110, 118 (9th Cir.1959). In this case, no statute creates a duty for PPQ or the USDA to monitor private fumigators to ensure that they do not harm the owners of fumigated plants under PPQ detention. PPQ's statement in its Treatment Manual that it will supervise the fumigation and check gas concentration levels before the release of the root stock does not evidence the clear legislative intent necessary to qualify under Washington's statutory intent exception. See Kirk, 270 F.2d at 118; Honcoop, 759 P.2d at 1192.[2] The Nurseries' arguments to the contrary are incorrect.
 
 
 19
 First, the Nurseries attempt to distinguish Kirk by arguing that in Kirk this court preliminarily determined that, apart from the federal statutes involved, no independent state common law duty was implicated. The Nurseries then argue that Washington common law provides a "duty to exercise reasonable care to avoid injury to the property of others when supervising an activity that presents a risk to that property." This appears to describe the duty to prevent a third person from causing harm exception. However, this common law duty does not help the Nurseries because we conclude that it does not apply in this case. See infra, § III.E.
 
 
 20
 Next, the Nurseries attempt to distinguish Kirk by claiming that the Plant Quarantine Act, 7 U.S.C. § 151, et seq., and the Federal Plant Pest Control Act, 7 U.S.C. § 150aa, et seq., both clearly state a legislative purpose to protect plant material during fumigation. The Nurseries are incorrect. The Plant Quarantine Act permits the Secretary of Agriculture to "prescribe remedial measures as he may deem necessary to prevent the spread [of pest infestation]." 7 U.S.C. § 154. The Nurseries interpret this passage to require the Secretary to select the least damaging remedial response because the statute fails to prescribe the destruction of all infested plants. Such a requirement reads too much into the statute. The statute's terms seek to protect the domestic agricultural industry generally from imported pests, not to protect specific pest-infested, imported plant material. See 7 U.S.C. §§ 154 and 160. Accordingly, the Plant Quarantine Act does not provide the necessary legislative intent to establish a duty by PPQ.
 
 
 21
 The Nurseries' reliance on the Federal Plant Pest Control Act is also misplaced. Both the Nurseries and the United States agree that this act does not apply directly to this case. The Nurseries look to the Federal Plant Pest Control Act because it specifically instructs the Secretary to take the least drastic remedial measures possible. 7 U.S.C. § 150dd(d). Section 150dd(d)' § language, however, undermines the Nurseries' argument by demonstrating that Congress knows how to protect the interest of private plant owners when it wishes to. It failed to use protective language in the statute that governs this case, the Plant Quarantine Act. Accordingly, PPQ's voluntary assumption of safety responsibilities for the public good does not give rise to an actionable duty under the statutory intent exception. See Kirk, 270 F.2d at 118.
 
 
 22
 B. The Failure To Enforce Exception Does Not Apply.
 
 
 23
 Under Washington law, a general duty of care owed to the public can be owed to an individual
 
 
 24
 where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect.
 
 
 25
 Honcoop, 759 P.2d at 1193 (quotation omitted). In this case, we conclude that the exception does not apply because the Nurseries have failed to identify a federal statute, which is intended to protect the owners of infested, imported plants, that PPQ failed to enforce. See discussion, supra, § III.A.
 
 
 26
 C. The "Good Samaritan" Exception Does Not Apply.
 
 
 27
 Under the "good samaritan" rule, a duty is created when a volunteer's conduct places a plaintiff at increased risk of harm or if the plaintiff justifiably relies on the volunteer's intervention. Brown, 545 P.2d at 18. PPQ's actions in this case do not qualify under this exception to the public duty doctrine because PPQ's actions did not increase the risk of harm to the Nurseries nor were the Nurseries justified in relying on PPQ.
 
 
 28
 The Nurseries do not argue that PPQ's failure to monitor the fumigation increased the risk of harm. Rather, they argue that through the Treatment Manual, PPQ volunteered to supervise the fumigation, and that, had the fumigation been properly monitored, the root stock would not have been damaged. The Nurseries' bald assertion that they relied on "PPQ to exercise reasonable care in the fumigation after [the Nurseries] were told by PPQ that PPQ would fumigate" is not supported by the record. The Nurseries, through their customs broker, made arrangements directly with Paramount. The government gave the Nurseries the choice of destruction, return, or fumigation of the root stock. The Nurseries cite to no express guarantee made by PPQ that the fumigation would not harm their root stock. Moreover, the statute involved does not invite reliance. The statute's purpose is to protect domestic agriculture from pest-infested root stock like that of the Nurseries. Accordingly, we conclude that the "good samaritan" exception to the public duty doctrine does not apply to this case.
 
 
 29
 D. The "Special Relationship" Exception Does Not Apply.
 
 
 30
 Washington's "special relationship" exception to the public duty doctrine is a variant of the "good samaritan" doctrine. Under Washington law,
 
 
 31
 [a] special relationship triggers an actionable duty where: (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff.
 
 
 32
 Honcoop, 759 P.2d at 1194. Again, this exception does not apply in this case because PPQ made no express assurances to the Nurseries that justified the Nurseries' reliance on PPQ supervision. The Nurseries' agreement with Paramount contained assurances that the pests would be killed and that the root stock would not be damaged. The Nurseries made no similar agreement with PPQ. Moreover, the record does not indicate that the Nurseries actually relied on the Treatment Manual's statement that PPQ would supervise the fumigation. The Nurseries' decision to fumigate was not based on any express assurance PPQ made, but rather was made because fumigation was better than the destruction or return of the root stock. Accordingly, we conclude that the special relationship exception does not apply.
 
 
 33
 E. The Duty To Prevent A Third Person From Causing Harm Exception Does Not Apply.
 
 
 34
 Finally, the Nurseries argue that PPQ had a common law duty to prevent Paramount, a third person, from causing harm to the Nurseries' root stock. Such a duty arises when
 
 
 35
 a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct....
 
 
 36
 Taggart, 822 P.2d at 254 (citing Restatement (Second) of Torts § 315(a)). The Nurseries argue that PPQ had a "special relationship" to Paramount "in the form of its regulatory duty to supervise." This is not enough. Section 315 of the Restatement (Second) of Torts contemplates only four types of third-party relationships: (1) parent-child; (2) master-servant; (3) landowner-licensee; and (4) those in charge of persons having dangerous propensities. Restatement (Second) of Torts, § 315 (1965), at 123, Comment of Clauses (a) & (b). PPQ does not stand in any of these relationships with Paramount.
 
 
 37
 Moreover, the Nurseries cannot have their cake and eat it, too. In seeking to establish Paramount's liability, the Nurseries argue that Paramount is an independent contractor and not an instrumentality of the federal government. If Paramount is an independent contractor, an actor over whom PPQ has no direct control, then no "special relationship" exists between the government and Paramount. Accordingly, the common law duty to prevent a third person from causing harm does not apply.
 
 
 38
 No. 91-36307 REVERSED; No. 91-36346 AFFIRMED. The Nurseries and the United States are entitled to their costs from Paramount and the United States is entitled to its costs from the Nurseries.
 
 
 
 [1]
 Because we conclude that the United States did not owe the Nurseries a duty, we do not decide whether the detention of goods and quarantine exceptions to the FTCA, 28 U.S.C. §§ 2680(c) and (f), apply in this case
 
 
 [2]
 The Nurseries argue that the Honcoop court's analysis of regulations as well as statutes indicates that the Treatment Manual, which is incorporated into the Code of Federal Regulations, should also be analyzed to determine statutory intent. This argument fails because the Washington courts have consistently limited the exception to "statutes." Honcoop, 759 P.2d at 1192; Baily v. Forks, 737 P.2d 1257, 1260 (Wash.1987). In Honcoop, despite the court's discussion of state regulations, it expressly based its conclusion that the state owed a duty on a statute. Honcoop, 759 P.2d at 1193-94