**Kevin HINES; Cathy Zampa, as guardian ad litem for Stephanie Hines, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–15225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1995.

Decided July 27, 1995.

1444

Fred Dawson, Tennant, Dawson & De-Hart, Gold River, CA, for plaintiffs-appellants.

E. Roy Hawkens, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.

BEEZER, Circuit Judge:

In this Federal Tort Claims Act action, we must decide whether the United States can be held liable for its alleged negligence in issuing a permit to a bulk mail delivery driver who, while driving a mail truck under the influence of drugs and alcohol, ran a stop light and crashed into a car resulting in the deaths of two passengers, Lesley Hines and her daughter Alexis.

Lesley Hines' husband, Kevin Hines, and Cathy Zampa, guardian ad litem for Hines' surviving daughter Stephanie Hines (collectively "Hines") appeal the district court's grant of summary judgment in favor of the United States. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. Because we conclude that after trial the United States may be subject to liability, we reverse.

## I

Kevin and Lesley Hines along with their two daughters Stephanie and Alexis were involved in a deadly automobile accident on the morning of April 13, 1992. While driving through an intersection in Sacramento, California, their car was struck by a truck and trailer transporting bulk mail under contract for the United States Postal Service ("Postal Service"). The truck had run a stop light. Tragically, Lesley Hines and Alexis Hines died as a result of the collision; Kevin Hines and Stephanie Hines suffered serious injuries, but survived.

The driver of the truck, William Smith, was arrested at the accident scene. Subsequent investigation revealed that Smith had been drinking alcohol and had recently used cocaine. Investigators determined that Smith had been at fault for the collision.[1]

Smith was employed as a driver for a company known as A.C. Wright ("Wright"), a government contractor transporting mail in bulk between various California cities and Sacramento under contract with the Postal Service. Wright had hauled bulk mail for the Postal Service pursuant to government contracts for over a decade.

Smith had been hired by Wright in early 1992. Pursuant to Management Instruction Number PO–530–89–03, the Postal Service was "require[d]" to screen all employees of transportation contractors to determine their fitness to be drivers of bulk mail trucks. If a driver had a specific number of convictions for listed violations, he or she was disqualified from obtaining the necessary permit. One such disqualifying item was "[a]ny driving conviction involving the use of drugs,

1. Smith was later convicted of gross vehicular manslaughter and driving under the influence.

alcohol, or any other controlled substances" within the past three years.

On March 19, 1992, the Postal Service issued a temporary permit allowing Smith to drive bulk mail trucks. The "require[d]" screening was not conducted. At the time, the Postal Service did not know that Smith's driving record contained a conviction for reckless driving within the past three years or that the offense was alcohol related.

Hines brought an action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.[2] He presented several different theories of recovery, including that Wright should be considered a government employee rather than an independent contractor; that the Postal Service had breached the duty it undertook to Hines to screen drivers operating trucks hauling mail; and that the Postal Service negligently entrusted the vehicle to Smith. The United States moved for summary judgment on all claims, which the district court granted.

Hines then moved for reconsideration pursuant to Federal Rule of Civil Procedure 60(b), arguing that recent California court decisions had raised a triable question regarding the United States' vicarious liability as a common carrier for the actions of Smith. The district court denied the motion. Although Hines did not appeal the denial of his motion for reconsideration in his notice of appeal, he argues the vicarious liability theory of recovery in his brief on appeal.

## II

■ We review de novo a district court's grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

## III

■ Hines first argues that the district court erred in determining that the United States was not liable as an employer for the alleged negligence of Wright (and its employee Smith). The district court concluded instead that Wright was an independent contractor and thus the United States was not liable for its actions under the FTCA. Hines contends that because the Postal Service reserved the power to screen driving records to determine driver eligibility, and because the Postal Service controlled and supervised "[w]hen, where, why and how the mail is transported," Wright was not an independent contractor. We agree with the district court that Wright was an independent contractor.

■ The FTCA contains a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); 28 U.S.C. § 1346(b); 28 U.S.C. § 2674. The FTCA includes officers and employees of "any federal agency" but expressly excludes "any contractor with the United States." 28 U.S.C. § 2671.

We have held that "[t]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor." *Carrillo v. United States,* 5 F.3d 1302, 1304 (9th Cir.1993) (quoting *Ducey v. United States,* 713 F.2d 504, 516 (9th Cir.1983)); *Orleans,* 425 U.S. at 814–15, 96 S.Ct. at 1976.

Although we have not addressed the situation presented here, whether a business that provides transportation of bulk mail for the Postal Service is an employee or contractor, other circuits have determined that such entities are independent contractors. *See Norton v. Murphy,* 661 F.2d 882, 883–85 (10th Cir.1981) (person under contract to deliver mail for United States was independent contractor and not an employee of the United States); *Fisher v. United States,* 356 F.2d 706, 707–09 (6th Cir.) (same), *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966).

---

**2.** Hines' action was also maintained against Wright, Smith, and others, but the only defendant relevant to this appeal is the United States.

Here, undisputed evidence in the record supports the United States' position that Wright is a contractor, not an employee. Wright owned and maintained the trucks used to transport mail; hired, fired and supervised its own employees; purchased fuel and arranged for insurance; determined the route for delivery of mail; and regulated the schedules of pick-up and delivery (although the Postal Service established a timetable for arriving and departing postal facilities). Postal Service employees do not accompany those who deliver bulk mail, and much of the actual hauling of mail is done outside postal facilities. The day-to-day details of mail delivery were in the hands of Wright, not the Postal Service, and the control of physical performance was similarly entrusted to Wright.

Hines responds that Wright was forced to comply with various Postal Service regulations regarding the transporting of mail such as minimum labor standards, protection of the mail, and upkeep of the trucks. Compliance with these contractual obligations does not establish employee status. As we have noted, the critical question is whether the government supervises and controls the day-to-day operations, not whether the agent must comply with federal standards. *Cameron v. Janssen Bros. Nurseries, Ltd.,* 7 F.3d 821, 825 (9th Cir.1993); *see Orleans,* 425 U.S. at 816, 96 S.Ct. at 1976 ("the Government may fix specific and precise conditions to implement federal objectives ... [;] [such] regulations do not convert the acts of entrepreneurs ... into federal governmental acts."). Neither do standards that are designed to secure federal safety objectives convert the agent into an employee.[3] *Ducey v. United States,* 713 F.2d 504, 516 (9th Cir.1983). None of the Postal Ser-

vice regulations governing Wright's conduct establish the requisite day-to-day control to qualify Wright's drivers for employee status.

Hines relies on our recent decision in *Sugimoto v. Exportadora De Sal, S.A.,* 19 F.3d 1309 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994). In that case, we examined the general rule in California that a person is not liable for acts of independent contractors. We noted that the rule was so "riddled" with exceptions that there were any number of good reasons for ignoring the general rule. *Id.* at 1312. *Sugimoto* is distinguishable. That case did not involve an FTCA claim. Under the FTCA, federal courts must apply federal law in determining whether an individual is a federal employee. *Brandes v. United States,* 783 F.2d 895, 896 (9th Cir.1986). Courts are not free to "abrogate the exemption" for the negligent acts of contractors regardless of whether there is a good reason for so doing. *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973).

## IV

Hines next contends that the Postal Service had a duty, based on the Postal Service's own "Management Instruction," to screen drivers for contract mail carriers, and it failed to screen Smith; thus, the United States acted negligently by breaching its duty.[4] The United States responds that it did not owe a duty to Hines under the Instruction to screen Wright's drivers for driving safety or competency and, in any case, the failure to screen Smith was not a cause of the accident. We agree with Hines and reverse the district court's grant of summary judgment on this theory.

3. For instance, the contract prohibited the contractor's personnel from performing operations under the influence of alcohol or drugs, established screening procedures for drivers, required drivers to use extreme caution in hazardous road conditions, required compliance with federal and state safety standards and limited the amount of on-duty time for drivers.

4. Hines argued to the district court that the United States also had a duty to screen Wright's drivers based on sections 1808.1 and 12810.5 of

the California Vehicle Code. The district court rejected that contention because those provisions only require employers to review their employee's driving records. Smith was not an employee of the Postal Service. Hines has not challenged the district court's decision rejecting the California Code as a basis for duty; thus, we decline to address the issue. *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1548 (9th Cir.1988) (per curiam).

▮ Notwithstanding our determination that Wright and Smith are not federal employees, the United States can still be subject to FTCA liability if its own employees acted negligently. *Logue v. United States,* 412 U.S. 521, 532–33, 93 S.Ct. 2215, 2221–22, 37 L.Ed.2d 121 (1973); 28 U.S.C. § 1346(b). The extent of the government's duty of care in an FTCA case is determined by reference to state law; in this case, California law. *Cameron v. Janssen Bros. Nurseries, Ltd.,* 7 F.3d 821, 825 (9th Cir.1993).

The Postal Service established a "Management Instruction" for the purpose of "screening transportation contractors and contract employees" to determine their fitness for transporting mail. An administrative official is responsible for reviewing the driving record of the contractor's drivers to ensure that they do not have any "disqualifying factors" before the official issues a temporary permit. If a driver's record contains "[a]ny driving conviction involving the use of drugs [or] alcohol," the driver is disqualified.

The Postal Service concedes that it did not review Smith's driving record prior to issuing him a temporary permit. Hines argues that such a review would inexorably have led to Smith's disqualification. The Postal Service disagrees, as did the district court, for two reasons: first, that the Postal Service did not have a duty to screen the driving records; second, even if the Postal Service had a duty and had conducted screening, Smith would not have been disqualified.

## A

▮ The United States argues that the Management Instruction does not create an actionable duty of care. It initially contends that the FTCA only imposes liability on the United States in the same manner as a private individual. *See Stuart v. United States,* 23 F.3d 1483, 1487 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994). This argument misses the mark. Under the FTCA, the United States may be liable for the performance of some activities that private persons do not perform. *Aguilar v. United States,* 920 F.2d 1475, 1477 (9th Cir.1990); *Doggett v. United States,* 875 F.2d 684, 689 (9th Cir.1989). Because private persons do not wield power to screen drivers of independent contractors who deliver bulk mail, the proper examination is whether state or municipal entities would be subject to liability. *Louie v. United States,* 776 F.2d 819, 825 (9th Cir.1985).

▮ Under California law, a public entity can be held liable for injury when it fails to discharge a "mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury," and the entity's failure proximately causes that injury. *Posey v. California,* 180 Cal.App.3d 836, 225 Cal.Rptr. 830, 838 (1986); *Trewin v. California,* 150 Cal.App.3d 975, 198 Cal.Rptr. 263, 266 (1984). An "enactment" includes a constitutional provision, statute, ordinance, or *regulation. Id.* Because it is clear that the Postal Service's Management Instruction contains mandatory language ("Postal Service policy requires that all [contractors' employees] be screened to determined eligibility as drivers"), the critical question is whether the screening process contained in the Management Instruction is a "regulation."[5] *See McDaniel v. Sunset Manor Co.,* 220 Cal.App.3d 1, 269 Cal.Rptr. 196, 198 (1990) ("threshold inquiry is whether the proffered rule is in fact a 'statute, ordinance, or regulation of a public entity.'"). Regulations give rise to an actionable duty; internal guidelines, policy manuals, and recommended procedures do not give rise to an actionable duty. *McDaniel,* 269 Cal.Rptr. at 198; *Posey,* 225 Cal. Rptr. at 838.

The Code of Federal Regulations contains the Postal Service's own definition of what constitutes its regulations. "The *regulations of the Postal Service* consist of: ... (3) Headquarters Circulars, *Management Instructions,* Regional Instructions, handbooks, delegations of authority, and other regulatory issuances and directives of the Postal Ser-

---

5. There is similarly no dispute as to whether the Management Instruction is designed to protect against the risk of a particular kind of injury. Peter Eng, who oversaw the screening proce-

dure, admitted that its purpose was to ensure that "the contractors use people who are not poor risks on the road."

vice...." 39 C.F.R. § 211.2(a) (emphasis added). The Post Office itself considers the Management Instruction to be a regulation.[6] *See Tovar v. United States Postal Serv.,* 3 F.3d 1271, 1277 (9th Cir.1993) ("courts, including ours, have treated regulations promulgated pursuant to [39 C.F.R.] § 211.2 just as they would any other regulations."). If the Postal Service sees fit to designate its Management Instruction as a regulation, we will not dispute it. In our judgment, neither would California.

We have little difficulty in also determining that the Management Instruction contains mandatory language. We believe that under California law, the instruction should be read to impose a duty on the Postal Service to screen drivers, a duty that the Postal Service concededly breached.[7]

### B

We must next consider the subject of causation. An essential element of a plaintiff's cause of action for negligence is that the defendant's act be both a cause-in-fact and a proximate cause of any damage to the plaintiff. *W. Page Keeton et al., Prosser & Keeton on the Law of Torts,* §§ 41–45, at 263–321 (5th ed. 1984). Hines argues that both types of causation exist here.

### 1

The district court concluded that Hines failed to present a dispute of material fact

supporting the element of cause-in-fact. The United States argues that the Postal Service would have issued the permit to Smith even if it had conducted the required screening.

While acknowledging, as it must, that Smith's driving record contains a conviction for reckless driving within the prior three years that was alcohol-related, the United States argues that the Postal Service interpreted the disqualifying instructions to apply only to convictions for driving under the influence, not other alcohol-related convictions. The United States submitted the declaration of Peter Eng, a Postal Service manager, who indicated that Smith's alcohol-related conviction for reckless driving would not have been disqualifying.

The Postal Service's interpretation of its own regulation is controlling as long as the interpretation is not plainly erroneous or inconsistent with the regulation. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). We are not convinced, however, that Peter Eng, a Manager at the Postal Service's facility in San Francisco, is entitled to have his interpretation of the regulation given much, if any, deference. *See United States v. Trident Seafoods Corp.,* 60 F.3d 556, —— (9th Cir.1995) ("[n]o deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."). The United States presented no evidence that Eng is vested with the authority to issue service-

---

**6.** We recognize that California defines a "regulation" as "a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States pursuant to the federal Administrative Procedure Act...." Cal. Gov't Code § 811.6. The Postal Service, however, is exempt from compliance with the Administrative Procedure Act. The California legislature clearly did not contemplate exempting all actions of the Postal Service from liability under the FTCA. Indeed, California Government Code § 815.6 indicates the importance California places on holding a public entity responsible for violation of a mandatory duty. Because the Postal Service's own definition of a regulation is published in the Code of Federal Regulations, and because we are unwilling to read a definition

from a California statute to override the public policy behind § 815.6, we decline to hold that no Postal Service duties give rise to liability under California law.

**7.** Our decision in *Kirk v. United States,* 270 F.2d 110 (9th Cir.1959), is distinguishable. Although we used broad language to hold that safety standards promulgated by the Army Corps of Engineers did not create a duty of care because the statute at issue defined no degree of care, the holding should be limited to the facts of that case. Here, the Postal Service had a self-described "regulation" that established a clear and straightforward duty. The public was the clear beneficiary of that duty because it would be subject to danger from unsafe drivers.

wide interpretations of Management Instructions.

■ Furthermore, even if we afforded Eng's interpretation deference, that interpretation is inconsistent with the language of the instruction, which disqualifies a driver who has "[a]ny driving conviction involving the use of ... alcohol" within the past three years. The regulation by its own terms does not limit its reach to convictions of driving under the influence. The Postal Service cannot unilaterally narrow that language to apply only to driving under the influence convictions. Smith had a driving conviction (reckless driving) "involving the use of ... alcohol." Even if the Postal Service is correct that it would have issued Smith a permit, its own interpretation of the regulation is manifestly unreasonable and deserves no controlling weight.[8] In the absence of persuasive evidence supporting the United States' interpretation of the regulation, the United States has failed to present sufficient evidence to warrant summary judgment on the question of cause-in-fact. We must remand for a trier of fact to determine if cause-in-fact exists. *See Prosser & Keeton* § 41, at 264–65 ("[cause-in-fact] is a matter upon which lay opinion is quite as competent as that of the most experienced court. For that reason, in the ordinary case, it is peculiarly a question for the jury.").

2

■ On the question of proximate (or legal) cause, California recognizes that under some circumstances, a public entity responsible for issuance of licenses can be held liable for injuries to a motorist involved in an accident caused by the improperly licensed motorist.[9] *Trewin v. California*, 150 Cal.App.3d 975, 198 Cal.Rptr. 263, 266–67 (1984); *Johnson v. Mead*, 191 Cal.App.3d 156, 236 Cal. Rptr. 277, 279–80 (1987); *see 5 B.E. Witkin, Summary of California Law* § 160, at 243 (9th ed. 1988). The question of proximate cause is usually defined with reference to the scope of the foreseeable risks of the actor's conduct. *See Prosser & Keeton* § 42, at 273; *Babbitt v. Sweet Home Chapter*, —— U.S. ——, ——, 115 S.Ct. 2407, 2420, 132 L.Ed.2d 597 (1995) (O'Connor, J., concurring) ("Proximate causation depends to a great extent on considerations of the fairness of imposing liability for remote consequences."). The negligent defendant need not foresee the specific harm; merely the general risk of harm. *Fein v. Permanente Medical Group*, 38 Cal.3d 137, 211 Cal.Rptr. 368, 378, 695 P.2d 665 (1985).

■ Here, the Postal Service's regulation was designed to prevent the giving of a permit to bulk mail drivers who were safety risks. One such safety risk involved alcohol-related accidents. The cause of the tragic accident involving the Hines' vehicle was Smith's driving under the influence. The accident was not a remote consequence of the Postal Service's failure to screen Smith; indeed it occurred less than one month after Smith was issued a temporary permit, and involved driving under the influence, the very problem indicated on Smith's driving record. Given the close relationship of the regulation's purpose and the resulting injury, we cannot conclude as a matter of law that proximate cause was lacking. Instead, we conclude that sufficient evidence exists to create a triable issue regarding the determination of proximate cause.[10]

---

8. Eng's declaration is, of course, self-serving because it was given after the accident and in light of the current lawsuit. As such, its value is diminished from what it would have been if the Postal Service had interpreted this regulation similarly before the accident. Nevertheless, we believe the result is the same no matter how much weight the Eng Declaration is given.

9. The rule in California is by no means a universal one. Other jurisdictions reject the theory that a state can be liable for its negligence in issuing a driver's license to a motorist when that motorist causes injuries to someone else on the roadways. *See, e.g., Guillot v. Louisiana*, 364 So.2d 254 (La.App.1978); *Southworth v. New York*, 47 N.Y.2d 874, 419 N.Y.S.2d 71, 392 N.E.2d 1254 (1979).

10. We need not, and do not, decide how far proximate cause might extend to other injuries, outside those caused by Smith's driving under the influence, caused by Smith during his work driving bulk mail delivery trucks.

In summary, we conclude that the United States has failed to establish as a matter of law that if it had performed the screening on Smith, it would have issued Smith the temporary permit consistent with the language of the instruction. The United States has also failed to demonstrate as a matter of law the lack of proximate cause. Rather, the issue of causation belongs in the hands of a trier of fact. We reverse summary judgment and remand for further proceedings on this theory of liability.

## V

Hines also argues that the district court erred in determining that the United States was not liable for negligently entrusting the vehicle to Smith. We disagree, and affirm the district court's summary judgment on this theory.

Under California law, "one who places or entrusts his [or her] motor vehicle in the hands of one whom he [or she] knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable" for injuries caused by the driver under a theory of negligent entrustment. *Mettelka v. Superior Court*, 173 Cal. App.3d 1245, 219 Cal.Rptr. 697, 698 (1985). The facts are undisputed that it was Wright, not the United States, who "placed" or "entrusted" the truck to Smith. Hines provides no evidence that California would extend its negligent entrustment theory to cover an entity that did not own or control the vehicle.

Indeed, the most analogous California decision is *Syah v. Johnson*, 247 Cal.App.2d 534, 55 Cal.Rptr. 741, 748 (1966), where the California Court of Appeal held that an insurance company that issued an insurance card was not subject to liability under a theory of negligent entrustment. Although the driver was only able to drive the car with an insurance card, the company still did not perform the requisite "placing or entrusting [of] a vehicle with the insured driver." 55 Cal. Rptr. at 748. Similarly, although Smith needed a temporary permit to transport mail, it was Wright and not the United States,

which actually entrusted Smith with the truck.

## VI

Finally, Hines argues that the Postal Service may be held vicariously liable for tortious conduct of a subcontractor under California law. Hines raised this theory of liability in a motion for reconsideration. The district court rejected it on the ground that no new California decisional law was presented by Hines.

We decline to consider this theory for several reasons. First, Hines did not appeal from the district court's denial of his motion for reconsideration. Second, the district court did not abuse its discretion in concluding that Hines had the opportunity to raise this theory at an earlier point in the proceedings, but failed to do so. Finally, even if California law subjects employers, under some circumstances, to vicarious liability for the acts of independent contractors, that would not affect the immunity of the Postal Service, under the FTCA, for the acts of contractors.

## VII

We AFFIRM the district court's grant of summary judgment to the United States on the negligent entrustment theory and the theory that the independent contractor was a federal employee. We REVERSE the district court's grant of summary judgment on the United States' duty to screen, and remand for further proceedings on that claim.

**REVERSED.**