O’SCANNLAIN, Circuit Judge:
We must decide whether the Small Business Administration owed any duty to a minority-owned small business concern by virtue of a federal set-aside program for minority-owned government contractors.
I
Liberty Construction, Inc. (“Liberty”) is a minority-owned business determined by the Small Business Administration (“SBA”) to be a socially and economically disadvantaged small business concern (a “section 8(a) concern”) under the set-aside provisions of § 8(a) of the Small Business Act, 15 U.S.C. § 637(a). In 1989, following the tender of several bid proposals by Liberty, Liberty entered into a subcontract with the SBA. The contract provided that Liberty would construct a “hazardous/flammable materials warehouse” for the Navy.[1] Liberty engaged two sureties, Sol Gerber and Lucille Kurtin (“the sureties”), who provided payment bonds. Essentially, the sureties agreed to pay Liberty’s laborers, suppliers, and subcontractors if Liberty failed to do so.
Liberty encountered financial difficulties after it began building the warehouse. Liberty was unable to pay its suppliers and subcontractors, some of whom filed claims against it and the sureties. Those claims were settled, but Liberty was forced out of business and its sureties were left to pay approximately $500,000 to unpaid creditors.
Liberty and the sureties each filed cross-claims against the SBA (which had been named as a third-party defendant), alleging breaches of statutory, regulatory, and contractual duties to Liberty and the sureties. Specifically, Liberty claimed that the SBA breached its duties, to Liberty under the Small Business Act, its implementing regulations, and the SBA’s Operating Procedures when the SBA made no effort to determine whether (1) the contract award to Liberty contained a fair and reasonable price that would allow Liberty to earn a reasonable profit, or (2) Liberty had the financial or technical capacity to perform the contract. It further contended that, had the SBA investigated the terms and Liberty’s financial and technical capacity, it would never have awarded the contract and therefore Liberty would not have suffered the financial ruin that befell it. Liberty also alleged breach of contract claims. The sureties’ complaint made identical claims as subrogees of Liberty, as well as an additional claim that the SBA owed the sureties an equitable duty to comply with statutory and regulatory provisions. The cases were consolidated in the district court.
The SBA moved for summary judgment, contending that the statutes and regulations governing minority set-aside provisions do not create a legally cognizable duty to section 8(a) concerns as a matter of law, which the district court granted. It ruled that the Act and its implementing statutes do not create a legally cognizable duty to Liberty or the sureties. On a motion for reconsideration, the district court clarified its decision, noting that neither the Federal Tort Claims Act (“FTCA”) nor the “sue and be sued” clause of the Small Business Act creates a right of action.
Liberty and the sureties now appeal the district court’s grant of summary judgment, arguing that they may bring their claims under either the FTCA or the “sue and be sued” clause. We will consider these arguments in turn.
II
The relevant provision of the FTCA states that
the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... under circumstances where the United States, if a private person, would *-213 be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b).
Under the law of this circuit, the United States may be liable under the FTCA “for the performance of some activities that private persons do not perform,” but only when a state or municipal entity would be subject to liability under the law of the place where the activity occurred.' Hines v. United States, 60 F.3d 1442, 1448 (9th Cir.1995) (citations omitted). In order for the United States to be hable under such a theory, however, it must have breached a mandatory duty for which a cause of action lies.
In this case, as in Hines, we look to California’s public entity liability law to determine whether the United States would be hable under state law.
Under California law, a pubhc entity can be held hable for injury when it fails to discharge a “mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury,” and the entity’s failure proximately causes that injury. An “enactment” includes a constitutional provision, statute, ordinance, or regulation. ... Regulations give rise to an actionable duty; internal guidelines, pohcy manuals; and recommended procedures do not give rise-to an actionable duty.
Id. at 1448 (citations omitted); see Cal. Gov’t Code §§ 815.6., 810.6.
The California Government Code defines “regulation” in this context as “a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States pursuant to the federal Administrative Procedure Act.” Cal. Gov’t Code § 811.6. Since the SBA’s Operating Procedures are not promulgated pursuant to the Administrative Procedure Act, they do not qualify as regulations for the purposes of California’s governmental liability statute. Consequently, Liberty and the sureties can only assert a claim under the FTCA to the extent that statutory and regulatory provisions create a duty to Liberty.
The duties that Liberty identifies boil down to two: (1) that the SBA owed Liberty the opportunity to earn a reasonable profit, and (2) that the SBA was required to make a determination that Liberty was “responsible” enough to handle the contract.
A
In support of its argument that the SBA was required to provide an opportunity for Liberty to earn a reasonable profit, Liberty points to the statutory provision creating the section 8(a) program, which provides:
It shall be the duty of the [Small Business] Administration and it is hereby empowered, whenever it determines such action is necessary or appropriate .... to arrange for the performance of ... procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns ....
15 U.S.C. § 637(a)(1)(B). Of course, the statute does not mention a reasonable profit. For that, Liberty points to 13 C.F.R. § 124.302(a) (1988), entitled “General,” which provides:
It is the pohcy of SBA to enter into contracts with other government agencies and subcontract the performance of such contract [sic] to concerns admitted to the section 8(a) program ... at prices which will enable a company to perform the contract and earn a reasonable profit.
13 C.F.R. § 124.302(a) (1988). Taken together, Liberty argues, the statute creates a “duty” to award subcontracts, and the regulation establishes a “reasonable profit” requirement.
We are not persuaded. While the statutory provision does use the word “duty”, it does not speak in mandatory language. The SBA need only award a contract “whenever it determines such action is necessary or appropriate” — a determination within the agency’s discretion. Moreover, even if “necessary or appropriate,” the statute only tells the SBA “to arrange for the performance of ... procurement contracts by negotiating or otherwise letting subcontracts.... ” 15 *-212 U.S.C. § 637(a)(1)(B). It does not incorporate any “reasonable profit” element.
The language of the regulation likewise does not speak in mandatory terms. While it may be the “policy” of the SBA to enable 8(a) concerns to earn a reasonable profit, it has no duty to do so. Policies are the result of discretionary decisions and are established to guide the agency’s employees; a declaration of policy does not create a legally enforceable duty.
Indeed, SBA regulations explicitly recite that the decision to award a contract is discretionary. “SBA is not required to make an award of any particular contract, and should it make an award, SBA is not required to award a contract to. a particular 8(a) concern.” 13 C.F.R. § 124.301(b)(5) (1988).
Not only is Liberty’s argument unsupported by the cited statutory language, it is flatly inconsistent with the statute’s pricing provision. “A [procurement] contract may not be awarded under this subsection if the award of the contract would result in a cost to the awarding agency which exceeds a fair market price.” 15 U.S.C. § 637(a)(1)(A). The fair market price “shall be determined by the agency offering the procurement requirement to the” SBA, based on either a cost analysis or recent comparable procurement prices. 15 U.S.C. § 637(a)(3)(b). We cannot reconcile the alleged duty of the SBA to ensure a reasonable profit with Congress’ command that the procuring agency pay a “fair market price” as determined by the agency.
Finally, our decision in Gifford v. Small Business Administration, 626 F.2d 85, 87 (9th Cir.1980), compels our conclusion that the SBA owed no duty to Liberty. Just like the “determination of how much to lend an Economic Opportunity loan. applicant,” id., the determination of the contract price in this case is discretionary. In Gifford, the SBA had to balance the statutory command to loan funds “adequate to assure completion” of Gifford’s project with the statutory limitation that there be “reasonable assurance of repayment of the loan.” We concluded that, when the SBA must apply “opposing criteria” in determining how much to lend an applicant, its decision is discretionary. Id. at 86-87.
The same analysis applies here. The SBA must award a contract with a “fair market price” as determined by the procuring agency (in this case, the Navy). Its “policy” is to enable subcontractors to earn a reasonable profit, but its ultimate decision about what constitutes the appropriate contract price is purely discretionary.[2]
B
Liberty claims that regulations required the SBA to determine that Liberty had the wherewithal to perform the contract. Liberty specifically identifies. 13 C.F.R. § 124.302(c)(1) (1988), which states:
SBA will not certify as to its competency [to the procuring agency as provided by 15 U.S.C. § 637(a)(1)(A) ], without first determining that the section 8(a) concern it intends to subcontract to is responsible to perform the contract in question. If SBA determines that the concern lacks the capability, competency, capacity, credit, integrity, perseverance, and tenacity to perform on a specific 8(a) subcontract, the contract will not be awarded.
Id. Liberty argues that because the SBA did not inquire into its capability, competency, capacity, etc., the SBA breached a regulatory duty to Liberty.
Liberty’s argument fails. The decision to certify that a subcontractor is “responsible” is discretionary. As we noted in Kennewick Irrigation Dist. v. United States, 880 F.2d 1018 (9th Cir.1989):
[I]t is irrelevant whether the government employee actually balanced economic, so *-211 cial, and political concerns in reaching his or her decision_ [T]he relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis.
Id. at 1028 (ellipses in original) (quoting United States Fidelity & Guaranty Co. v. United States, 837 F.2d 116, 120-21 (3d Cir.), cert. denied, 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988)). Whether a potential subcontractor has the capability, competency, capacity, credit, integrity, perseverance, and tenacity to perform a contract is a matter of policy analysis.[3] It therefore cannot form the basis for an enforceable duty against the SBA.[4]
C
Because neither duty posited by Liberty is mandatory under a statute or regulation, the SBA cannot be held liable under the law of California, and hence cannot be liable under the FTCA.
Ill
Liberty’s alternative argument for SBA liability is based on the “sue and be sued” clause of the Small Business Act.
In FDIC v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme Court discussed the relationship between the FTCA and the “sue and be sued” clause governing the Federal Savings and Loan Insurance Corporation (“FSLIC”). The unanimous Court held that any claim “cognizable” under the FTCA cannot be brought pursuant to a “sue and be sued” clause. Id. at 476-80, 114 S.Ct. at 1001-02. Such “sue and be sued” clauses are presumed to have fully waived sovereign immunity. Id. at 480-82, 114 S.Ct. at 1003. Thus, in Meyer, the Court determined that the “sue and be sued” clause waived sovereign immunity of FSLIC not only for claims under which a private entity would be hable, but also for claims subjecting it to liability for public or governmental acts-in that case, for a tort claim based on violations of the Constitution. Id. at 480-84, 114 S.Ct. at 1003-04.
The Court did not end the inquiry there, however. “The first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver ... the second inquiry comes into play-that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief.” Id. at 484,114 S.Ct. at 1004.
That the Small Business Act waived sovereign immunity in its “sue and be sued” clause is not in dispute. Liberty and the sureties must satisfy Meyer’s second inquiry. That is, because of the FTCA’s exclusive remedy clause, what claim do they assert based on substantive law that is not cognizable under the FTCA? 28 U.S.C. § 2679; Meyer, at 482-84, 114 S.Ct. at 1004.
The only substantive law providing for a cause of action for breaches of federal statutes and regulations available to Liberty and the sureties is Cal. Gov’t Code § 815.6. Since such actions are cognizable under the FTCA, they may not be brought under the “sue and be sued” clause. Liberty and the sureties have failed to identify a source of law that could not be brought under the FTCA. Furthermore, we have already held that the Small Business Act does not create a private right of action for breaches by the SBA of its statutory and regulatory provisions. Savini Constr. Co. v. Crooks Bros. Consr. Co., 540 F.2d 1355 (9th Cir.1974); accord Aardwoolf Corp. v. Nelson Capital Corp., 861 F.2d 46, 48 (2d Cir.1988); Tectonics, Inc. v. Castle Constr. Co., 753 F.2d 957, 960 (11th Cir.), cert. denied, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985).
*-210 IV
The sureties make one final claim-that the government owed an independent equitable duty to them to investigate Liberty’s financial condition and to ensure that Liberty could earn a reasonable profit. The sureties contend that because they would not have incurred losses had the SBA fulfilled these duties, they now have a claim for their losses. They rely exclusively on Ohio Casualty Ins. Co. v. United States, 12 Cl.Ct. 590 (1987), and Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed.Cir.1985). Those cases have no application here. Both discuss the equitable duty the government has after a surety undertakes its performance bond obligations and later requests that the government stop paying the contractor. In this case, the government’s alleged misconduct occurred before the sureties undertook their obligations. Furthermore, the Miller Act, 40 U.S.C. § 270a et seq., requires government contractors to obtain payment bonds from sureties to protect laborers, suppliers, and subcontractors from contractors who default, see Balboa, 775 F.2d at 1161; the sureties are paid to assume the risk that a subcontractor will default, and it is up to them to investigate the subcontractor before assuming that risk. A duty running from the SBA to the sureties in this ease would undermine the Miller Act scheme and would make the SBA a surety itself.
V
Both Liberty and the sureties alleged specific breach of contract claims based on the written contract between the SBA and Liberty. In an earlier appeal, we ruled that the district court had jurisdiction to hear the contract claims, for disposition of which we remanded to the district court. In re Liberty Construction, 9 F.3d 800 (9th Cir.1993). Curiously, Liberty and the sureties failed to pursue their contract claims upon remand. In the hearing on the SBA’s motion for summary judgment, the district court specifically asked Liberty if summary judgment could be entered in light of the contract claims. Counsel for Liberty again referred the court to its regulatory duty claims and did not mention any independent contract claims. In fact, Liberty did not even place a copy of the contract in the record before this court. We cannot say it was error to grant summary judgment in favor of the SBA on the contract claims in light of Liberty’s utter failure to identify those claims in the district court.
VI
Liberty took advantage of a minority set-aside program and entered into the SBA contract with its eyes open. It knew the business risk. Likewise, the sureties had ample opportunity to investigate Liberty’s financial stability and ability to perform the contract. If the contract price offered to Liberty was inadequate, Liberty should have rejected it. Liberty was not guaranteed a result, but only given an opportunity; the rest was up to it.
AFFIRMED.

. Typically, when a federal agency desires to enter a contract appropriate for performance by a small business, the SBA contracts with the procuring agency and then subcontracts with small businesses. The SBA is thus the contractual "middle-man” between the procuring agency and the small business for section 8(a) contract awards.

. Liberty’s argument that Kennewick Irrigation Dist. v. United States, 880 F.2d 1018 (9th Cir.1989), requires a different conclusion is not persuasive. Kennewick was careful to follow the rule of Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), which established that a "standard operates to remove discretion under the FTCA when it is embodied in a specific and mandatory regulation or statute which creates clear duties incumbent upon the governmental actors.” Kennewick, 880 F.2d at 1026. The regulations at issue are neither specific nor mandatory, nor do they impose clear duties on the SBA.

. We held in Gifford that deciding on the amount of a loan to a small business in light of the business' ability to repay it is a discretionary determination. Gifford, 626 F.2d at 87. Determining a subcontractor’s "competency, capacity, credit,” etc. in this context is likewise discretionary.

. Liberty's argument is especially peculiar in light of the purpose of this supposed duty-the SBA inquires so it can promise the procuring agency that the subcontractor is up to snuff. Nothing suggests that the SBA investigates subcontractors to protect small businesses from their own errors. See Hines, 60 F.3d at 1448; Cal. Gov't Code §§ 815.6, 810.6.